May I please the Court? Petitioners Freund and Mathewson were two among thousands who had their appeals wrongly closed. Even now, the Secretary appears to acknowledge that this situation is problematic and wrong, but the VA's position in this case prevents thousands of similar appeals from ever being addressed. That means veterans waiting for their benefits claims will be denied the benefits that they are entitled to under the law. Is there a typical period of delay between the filing of the substantive notice of appeal and the decision by the Board? I know it can be several years, but is there a typical period? Your Honor, there is a delay. The Veterans Court in Godsey, for instance, you know, addressed this. It was something like 700 days between one step and 300 days in transmitting the transcript. So delays are normal and Judge Dyke, that plays into why this was so deeply problematic because veterans claimants don't know that the delay is not due to the ordinary course of proceedings, but because the agency has frankly lost their appeal and has no plans to work on it. And so I guess what I'm wondering is why couldn't a VA notify people who have, who they have claims pending before the Board that if they haven't received a response, let's say in three years, please let us know and we'll check to see whether the system has a glitch in it that has failed to recognize that you filed a notice of appeal. Absolutely. As Your Honor knows, we requested notice as part of the class-wide relief, you know, 263, 264, the appendix. There is no reason why the agency can't notify, and indeed it is obligated to notify claimants under 19. But they wouldn't have to notify claimants whose appeals have been lost. They could just notify everybody who has filed a claim with the RO and say, if you believe your appeal has gotten lost, let us know. Exactly, Judge Dyke. This, I think, gets to what ultimate relief the Veterans Court could fashion upon remand. Of course, that's not before this Court, but I think that's a good point, that precisely there are more manageable ways of notifying potentially affected individuals if the Secretary's complaint at this point is that it could be too cumbersome. But we've pointed out in our briefing below that it takes mere minutes for the Secretary to create notice for each individual claimant. The burden really shouldn't be on the individual Veteran. The MVLSP amicus brief at page 8 points out the vast majority are proceeding pro se. Individuals don't know that their appeals have been closed because they have done everything under the statutes and regulations that they were supposed to. They've turned square corners. The basis for closing without notice, I think that's a regulation, right? That's right. Do you know what the history of that is? Does anybody try to challenge that regulation? That seems to be where the notice would most easily, and it's going to be a burden on the VA no matter what, but it's the one that matches up with the problem here most closely is if a case is closed, then you send notice to the Veteran. That's right. Other than just sending notice to everybody whose cases have been pending for more than three years because, unfortunately, that's happening in a fair amount of cases. Did anybody challenge that regulation at the time, or is that one of those old regulations that predates our review? I'm not positive if anyone challenged the regulation. That's 38 CFR 19.32, and that's what the Secretary points to to say we don't have to provide notice. Of course, if you read the regulation, it says the agency can only close appeals as untimely if it's actually untimely without notice. I also point out that 19.34 provides as an independent basis for an appeal the agency's determination of untimeliness, so the fact that there's no notice sent out whatsoever is deeply problematic. Judge Hughes, just to more directly answer your question, it's not the regulation itself that caused this problem. It's the VA's implementation in this vehicle system where somehow this program... You don't have a problem with them closing cases without notice if it fits the requirements of the regulation. It's just that here, it doesn't fit the requirement. Exactly. There's no way in which this fits. All the veterans here did what they were supposed to, and indeed, as we point out in our FAFSA... Wouldn't it be easier for... I'm going to ask the VA this, but wouldn't it be easier to solve notice problems just to give notice to every veteran whose case was closed and say we're closing your case because of X? And then they might... I assume their argument is going to be, well, there's probably a lot out there that they've stopped pursuing them and it's a burden, and maybe they'll re-pursue them if they get notice, but that seems to me to be the logical way to get here. I know we're talking about stuff that can happen at the Veterans Court, but rather than you close the case, you give the veterans notice. And indeed, Your Honor, the agency actually is supposed to provide notice about untimely appeals because, again, that's an independent basis for an appeal. That's 19.34. So yes, I would agree. The agency has at its disposal various tools, again, uniquely within its possession, its knowledge. Petitioners filed, for instance, a FOIA request in December 2020, never got a response until this action started. So, you know, there are various tools at the agency. Can I just ask you, I'm a little confused about what you want us to do here. I mean, I know you want us to overturn the denial of the certification. Is it because the Veterans Court wrongly found that the petitioner's claims were moot or that the class claims were moot? And if, I mean, the petitioner's claims, I think you agree are moot. The class claims, you argue, aren't, which seems right to me. What's the basis for us to send it back? And what do you want us to do? Do you want us just to tell the Veterans Court that they actually have to do that class certification analysis now and determine whether there's adequacy, commonality, all that kind of stuff? Right. So just to start from the top, I'll work my way down. We agree petitioners' individual claims are moot. We pointed out in the standing discussion of our opening brief and also in our reply, which, by the way, the Secretary does not defend. He calls it dicta. But we point out that petitioners have standing to seek reinstatement, but also a determination of unlawfulness. It's unlawful, ergo, you have to reinstate that they should receive notice. That part of the Veterans Court's reasoning, we would respectfully request the Court to correct. You know, the Secretary does not defend it. There's some weird reasoning by the Veterans Court about their lacking standing because they were mooted, and that's simply not the doctrine of standing. You want us to say that the class issues and the class relief is not moot because of the transitory exception, right? Exactly, Judge Dyke. We want this Court to hold that the inherently transitory exception applies here, and I was about to get to that. So the Veterans Court recognized that it would apply if certification is appropriate. So we want this Court to recognize inherently transitory exception applies, going all the way back to Sosna 1975. Do you also, I understand that that's what you're seeking, but do you also want us to say that the Veterans Court erred in its analysis of adequacy and commonality because of the notice points and confusion between standing and mootness points? Correct, Judge Stahl. So there are essentially three different parts that this Court should address. Standing, inherently transitory applies, and on class certification, again, undefended by the Secretary. The reasoning on adequacy and commonality were just wrong as a matter of law. Has the Government made any other arguments as to why class is not appropriate? So for the first time on appeal, the Secretary argues ascertainability. We pointed out in our reply why, you know, that's forfeited. They didn't press that below, but also how that's inappropriate. Of course, in the Veterans Court below, the Secretary made various arguments on adequacy, commonality, typicality. That bottomed out to what we point out in our opening brief was incorrect, that, again, the Secretary does not repress on appeal, saying it was dicta by the Veterans Court. So I would respectfully submit that it is essentially undefended on the basis of the Veterans Court's decision. So we point out in our reply brief a First Circuit case where the First Circuit recognized that the only basis for class certification denial was incorrect. The District Court applied 23B3 instead of 23B2. And just on that basis, recognizing the only hurdle to class certification was incorrect, directed reversal and class certification. Of course, this Court can just simply vacate and remand, but we respectfully point out that, you know, Petitioners Foyn and Mathieson are representatives. They filed their original benefits claims back in 2016, 2017. Here we are in 2024 trying to get this problem corrected for the rest of the class, and further delays will only exacerbate the problem. So because it's been fully teed up, the Secretary has not really fulsomely briefed this issue on appeal. It's essentially undefended. We don't think the equities should allow the Secretary to take another bite of the apple and press further arguments on class certification. So their argument is it's not ascertainable because it's hard for them to identify the people who were injured because of the glitch? Yeah, it's an odd fit for ascertainability. That's not what ascertainability requires. Is that their argument? Exactly. That's their argument. And of course... I mean, don't you think that that's something that perhaps the Veterans Court might be in a better position to address than us, though? I mean, you know, the Veterans Court, I think, probably did err here, at least with regard to the mootness of the class. And even though it made decisions on the actual issues of class certification, they were all jumbled up in what seemed to be a somewhat flawed standing determination. And so if we send it back, then the Veterans Court can correct those errors. I mean, it seemed pretty apparent that there probably is commonality and adequacy, but then can go through with the rest of it and also determine what the appropriate class relief is. Sure. So if this Court does not want to reach the rest of the class certification grounds, this Court can remand. Again, I would just point out that this was not pressed below, so it's an odd sort of posture to allow the Secretary, again, to rebrief something. He should brief first. Well, I understand. But I mean, if a class gets certified here, it's going to be a huge burden on the VA. And perhaps they should be undertaking this. It sounds like if they've closed cases without properly, but improperly and haven't given people notice, they need to fix it. But the exact way that remedy happens seems best left in the Veterans Court and with maybe some further briefing from both parties. So, Judge Hughes, I would just tease out two distinct sort of strands there. One is certification, one is class relief. I think if this Court is persuaded that a class exists, you know, there's pre-May 2017, the Secretary hasn't touched, there's closures that continue to happen even today, right? If this Court is satisfied that there exists a class, it can direct that a class. I mean, part of the problem is you've done a great job up here on briefing, but the briefing below was not great from your side. And I think it confused the Veterans Court a little bit on some of these issues, which is why I think we've ended up with this mess of confusing, you know, mootness for the petitioners of the class as a whole and things like that. So, I just wonder if it's worth letting the Veterans Court redo it under a proper legal standard. I would also respectfully point out that the Secretary's briefing on this point, pressing adequacy and commonality, the Amkin or Hughes grounds that he no longer defends on appeal, that's the basis of the Veterans Court's reasoning. I'm not saying their briefing was good either, but I'm just saying it was confusing and I understand why the Veterans Court judge might have gone down the wrong path here. You're not asking us to determine what the relief should be. No, Judge Dyke. That is for the Veterans Court to decide in first instance. This case never got out of the gate because of all the erroneous reasoning on mootness that this court should vacate. Okay. Thank you. We'll give you two minutes for rebuttal. Mr. Wisser. Good morning, Your Honors. May it please the Court. To be clear about the government's position here, we recognize that there are difficult questions about mootness as to the class. We also are not providing... Difficult questions? We are also... Let's just assume we disagree with you that there is standing... I don't know how the Veterans Court got here. I suspect it's what I said, is that the briefing was confusing from both sides below, I think. Let's just assume we find that the Veterans Court erred in finding that the class was moot and that there wasn't standing for the class and that therefore, he improperly denied certification. Do you actually have substantive arguments on common issues, adequacy, and all that things like that that the Veterans Court needs to the petitioners are adequate? Yes, Your Honor. In regards to the class. What we would request, and let me just make sure I lay out our position, we believe there is a defect in the Article III jurisdiction for the named petitioners that occurred before the class certification decision was reached, which means the case cannot go forward. Putting that aside... What is that defect? The defect is that the claims were moot, which is not disputed for the named petitioners under Supreme Court precedent because they were mooted before... We're talking about the inherently transitory statement. That's correct, Your Honor. Just assume we disagree with you. If we move past all that, then our position would be that remand is appropriate for the reasons that Your Honor explained. Remand on what? Remand as to relief? Sure. As to class certification, Your Honor. What are the issues that need to be addressed? So there are two points that we would make on that, Your Honor. First is even though the Veterans Court did address some of the questions on two of the elements for class certification, they would need to make the findings necessary on all the elements of class certification. And so the Veterans Court... Did you present any arguments below on those other... No, Your Honor, because the arguments were presented in the alternative. And I think that's reflected, as Judge Hughes suggested, reflected in the decision. You didn't present any arguments below on the other factors for class certification? Not that I understand, Your Honor, because it was explained as an alternative basis for denying for jurisdiction, not as a sort of merits explanation in full, is my understanding of the position taken below. And I think that's reflected in the messiness of the Veterans Court decision. So what explicitly do you think would be disputed by the VA with regards to the class certification issues below? So ascertainability is the point that we presented in this briefing here. Was that saying that it's hard for you to identify the people? Well, not simply hard. We believe it's not actually possible to identify the individuals affected because what we're talking about, it's a class of individuals between 2003 and 2017. What case says that you don't have the ascertainability requirement for class actions satisfied because it's hard to do it? There's third circuit precedent on that issue, Your Honor. This circuit has not addressed ascertainability as it relates to class actions. That's another reason why we believe it would be most appropriate to... And what does the third circuit say? What case is that? I apologize, Your Honor. I have to double check if we actually included the citation in our briefing. You may have removed it in the final version of the briefing. But there is third circuit case law. The standards for ascertainability are not consistent among the circuits, some of the higher bar, some of the lower bar. Whether it is possible to determine the members of the class there is... So the third circuit says it's hard to figure out who the class members are and the defendant would have a hard time identifying them. That's a basis for... Yes, Your Honor. What case? I apologize, Your Honor. I know I had it in a draft of the brief and I fear that I may have taken that. I think... So, okay, we did have one of the cases cited. BMW... I'm sorry, Marcus v. BMW of North America, 687 F3rd 583. Where is this cited in the brief? Page 36 of our response brief, Your Honor. And it says the quote we pulled from that decision was, at least with respect to Rule 23, the class must be currently and readily ascertainable based on objective criteria. What page? Page 36, the very last page of our response brief, Your Honor. You mean 37? 36? I'm sorry. I'm sorry. I flipped to the reply brief. I flipped to the Petitioner's reply brief where they brought forward the case that I think we had identified and not cited. So you didn't cite the case? It does not appear that we included the citation in our file version, Your Honor. And where do they cite it? So they cite it on page 36 of their reply. It is the same case that we had identified. Why do you say this is not ascertainable? Because, Your Honor, we have... These estimated... We have 781,951 cases that could potentially be impacted by this. Okay. So but what case says that the fact that it's hard for you to do it means that you shouldn't certify the class? I don't see that Third Circuit case cited by your opposing counsel as saying that. What case says that? It is that case, Your Honor. That's the case we would rely on as well. And the case involved where it was hard for the defendant to identify the class? Yes, Your Honor. He just didn't identify the class in that case. For the same reasons that it's hard in this case, Your Honor. That there was a class of potentially impacted individuals, but it was impossible to determine which within that universe were actually impacted. How were they potentially impacted? So what we have here... I'm sorry, Your Honor. I understand what we have here. I want to know what was going on in Marcus that you think was analogous. So it was a class action related to manufacturing defects, and there was an understanding that some defects existed, but it was impossible to determine which particular vehicles were impacted. Impossible. There was a statistical understanding. Impossible. It was said it was impossible. I don't know if impossible is the precise word. That seems very factually different. I mean, if the cars are sold in the hands of the consumers, then the manufacturer can't go out and demand to look at all of them. You have all the records here. I know they're voluminous. It would take a lot of man hours, and that may go towards what relief you get. But you just said that there's potentially, what, 781,000 cases that are impacted by this? 781,000 is the total number of cases... How do you know that? That's the total number of cases that VA closed between 2003 when the vehicle system was implemented and May 2017 when VA began its systematic review of all closures. So that's the total number of claims closed for any reason whatsoever, and there is no way based on the data that VA kept during that time period for VA to look at five. But shouldn't that go to relief? I mean, can't you just send out a notice to everybody and those 781,000 people say, your case was closed during this period. If you think it was improperly closed, please contact us. I don't want to get into the details of relief, but... But that's relief. But it doesn't sound like, to me, that it's unassertainable. It sounds like you may have to not be able to ascertain the specific class, but you can ascertain a bigger class that includes these people. Potentially. It's not clear that VA even has contact information for all 781,000. So it's not clear that VA would even be capable of sending the notices. I mean, isn't that all stuff implementation for the Veterans Court to decide how it's going to order relief, how it's going to implement it? Recognizing the sensitivities that this is going to put on you, but also recognizing the people whose claims were improperly closed after they submitted a substantive notice, have it right to have those claims heard? They do, Your Honor. I want to pivot back to the mootness piece. I understand the Court's concerns, and I'm not resisting them strenuously about the class-wide relief here. There is a jurisdictional defect, and I want to make sure our position is clear because I think this Court will need to address it in the opinion, and I want to provide the Government's position to make sure the Court is addressing it correctly. Once the petitioner's claims became moot, before the Veterans Court took action on class certification, under Supreme Court precedent, the case had to be dismissed, which is what the Veterans Court correctly did. That's not true. The exception is for inherently transitory activities. But as the Supreme Court said in Genesis, the inherently transitory nature of the challenged conduct has to be determined independent of litigation conduct, and it has to be determined based upon the conduct itself. You say yourself that the policy that the VA applies in these circumstances of reopening the cases is not a litigation-driven policy. No, it's not, Your Honor. But the point is that the challenged conduct, the way that the petition for relief for Randamus was framed, was that the problem here is cases that are closed and that remain closed indefinitely, permanently, without further action. That's not inherently transitory. And I understand the — Do you really think, if we're really going to show this, that the Supreme Court is going to reverse this? Haven't you been watching what the Supreme Court's been doing in Veterans cases? What I'm explaining, Your Honors, is that this Court will need to make a clear finding that the challenged conduct, meaning indefinite inaction, is inherently transitory by its nature. Inherently transitory because once the people are identified, you're going to grant the relief. So I want to be clear about this point, Your Honor, because that's a separate argument that the petitioners are making. They're relying on the picking-off exception. That's a separate thing. It's not inherently transitory. No, that relates to inherently transitory, by understanding what they're — they're saying it's inherently transitory because once the people are identified, they get relief. And — and I — I agree that's part of their argument, Your Honor. The Supreme Court rejected that in Genesis, that the fact that defendants will act to provide relief when requested is not a basis to — I don't think that's a correct reading of the case. Well, I will admit, Your Honor, that Genesis ultimately dealt with FLSA collective certifications. There is a factual distinction. But the point that they made in summarizing the relevant case law and the inherently transitory exception was that it has to be — and the paradigm — Can I just get you back to the — because I'm still unclear what you're disputing. If we disagree with you on this standing stuff, what you're disputing or what disputed issues there would be for the Veterans Court to resolve if we vacate and remand rather than just say this class should have been certified? And our strong — What's the two options I think you're going to get here? Yes, Your Honor. So is there an issue with regard to commonality or is there an issue with regard to adequacy that's separate from all this mootness stuff? We have not presented this Court with any arguments on those points. We believe ascertainability is something the Veterans Court would need to address. I understand the concerns about waiver there. But I think to Judge Hughes' point in the opening argument, the Veterans Court very pointedly said it was not addressing the full elements for class certification. We believe we should provide the Veterans Court, in the first instance, the chance to do that. We believe — I think it comes through in the petitioner's briefing. One of their concerns is the precedential effect of this Veterans Court decision on future class action certifications. Can I just ask you one more question on ascertainability? You say you don't have the data. Is it — is that because the only way to get it is to look through every single one of those 781,000 cases and see if a statement of the case was submitted and see if it was closed? Yes, sir. Without — that doesn't sound unascertainable. That sounds incredibly burdensome. But that sounds like a question for relief, not class certification. I acknowledge that may be a question for relief. I think that there is — there is some precedent in the Third Circuit that proportionality and effort comes into play. And the only point I would make there is because this Court has not made any determinations on how ascertainability applies to class actions, it is a disputed issue among circuits. It would be better for the factual development and the legal development to let the Veterans Court address that issue if it determines, also in the first instance, that it hasn't been waived by the Secretary. I think all of those issues should be left to the Veterans Court to determine in the first instance. I do want to just leave with the point that the inherently transitory exception should not be applied here. And I understand the reluctance of this Court to reach that determination given the issues of relief that are at stake here. And the only point that I would make in response to that is that the Court can't manufacture an Article III case in controversy just to relief — just to reach the relief that it would like to reach. And if there is no Article III case in controversy — You can't decline to misread the cases the way you're suggesting. Respectfully, Your Honor, we believe that our reading is consistent with how the Supreme Court has approached this issue. How would there ever be a class in this factual scenario? There may not be, Your Honor. And again, as the Supreme Court has reminded us over and over on Article III jurisdictional issues, the fact that you may not be able to afford relief is not a justifiable basis on its own to find an Article III case in controversy. I've got to say, I really find the VA's position and attitude about this to be unsatisfactory. I mean, you, as a result of adopting a bad system, have caused injury to a lot of veterans. And your position seems to be it would be hard to fix it, so we're not going to do anything about it. That does not sit well. I understand the Court's concern. And the only thing I'll say is that it's more than hard. I think if it were simply hard, VA would do it. And that's what VA did. It was hard to do what VA did to identify all of the potentially affected claimants between 2017 and 2022. It took thousands of hours, but they did it because it was the right thing to do. It goes beyond hard to find the potentially affected claimants from 2003 to 2017. It borders on the impossible. And that's why VA has taken the position it is. Respectfully, Your Honor. When you say borders on the impossible, is that because of man hours and resources? It is, Your Honor. And just to provide the calculation, VA has estimated it would take about 250,000 labor hours to process all these claims. We're talking about VA... It would require 250,000 man hours to notify people that this problem exists and ask them to tell you if their cases seem to have gotten lost in the system. It may go down a little bit, Your Honor, but realistically, it's not going to go down that much because VA doesn't have adequate contact information for a lot of these veterans. Aren't people required to notify the VA about what their changes are? They are, but there are practicalities here, Your Honor. Doesn't that just go to relief, though? I mean, I really don't understand why you just can't send out a notice to everybody whose cases were... Because you said you know what the 781,000 is. Yes, Your Honor. Why you can't just send out a notice to the best address you have for all of those and say, if your case was closed during this time period and you think it was improperly closed, let us know. Because out of that 781,000, VA's best estimate is there's far less than 1% out of those that may have been potentially affected. Who cares? Well, the point, Your Honor, is that from VA's experience here, way more than 1% is going to respond to that notice, and so we're not meaningfully reducing the challenge from VA's perspective, that they're going to get notices from a much higher percentage of people who are going to do what veterans understandably will do, which is say, I may have had an issue, I want to check it out. We understand that impulse, but it's not going to change the management challenge for VA. What is your basis for saying it's less than 1% anyway? Because the... Well, you don't know who it is. You really don't know that. Well, the rate of error that VA found between May 2017, and I apologize, I see I'm out of time, but I'd like to answer the question, Your Honor. The rate of error rate was 1.5%. So that's the number of closures that should not have been closed because they had a valid appeal. So that's the absolute ceiling. It's unlikely to be higher than 1.5%. It's very likely to be lower, because again, we're talking about cases that are pending between 7 and 21 years. The odds that someone went 7 to 21 years without taking any effort to inquire with VA about the status of their appeal is much lower. And as we pointed out in the briefing, as soon as VA identifies an issue or realizes something may have gone on, they will reactivate the appeal. What is your scientific method for determining the percentage of parties that might respond to your notice, but wrongfully? The percentage of Veterans who would do that? It's not a point we put in the brief, Your Honor. It's just based upon VA's experience that whenever they send mass notices, Veterans tend to respond, even if they aren't responding necessarily substantively. They just tend to respond. And that's because these are important issues, and they're issues that are affecting their health. We recognize that. But it's an unfortunate reality of the management challenge here. Okay. Thank you, Your Honors. Your Honors, I'll keep this brief. The Secretary, I think I heard him saying that he didn't argue the other grounds of class certification. That's not typicality, basically on the same grounds as commonality. And that there are no common issues tying the class together. And as we pointed out, that's simply not the case in our opening brief. And the Secretary does not respond in his response brief. So for the reasons of forfeiture that Your Honors have walked through. Well, maybe I misheard them. But I thought I was asking them today what they were still disputing. And it sounded like not a lot. I agree. I found that it wasn't moot. I agree, Your Honor. And so the agency shouldn't get a mulligan to rebrief class certification when there just isn't that argument in the record. I think this Court appreciates that there are ways of fashioning relief for the Veterans Court. That ascertainability, as they pointed to our case that we cited. Well, there's certainly ways. But, I mean, and they may have to be done because these are problematic errors. But it's going to cost tens of millions, if not hundreds of millions of dollars to do this, probably. Respectfully, I think the question of relief is, again, not before this Court. But even taking the... We're going to leave it to the Veterans Court to decide these issues. Right. Even by the Secretary's own framing, if, you know, absent a class action, the agency is asking for individual petitions, which are surely much more costly on an institutional level and a burden on the Veterans Court. But also just practically unrealistic, given the pro se status of a lot of these veterans. And so this idea of we don't want to notify people because they might come out of the woodworks is really just a perverse sort of approach for the agency when there are so many veterans who likely have their just benefits appeals closed. So with that, we respectfully request that this Court vacate reverse and hand remand for determination of merits. Thank you. Thank both counsel. The case is submitted.